IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LISA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:17-CV-1909 |
| | ) | |
| LOU FUSZ AUTOMOTIVE | ) | |
| NETWORK, INC., | ) | |
| | ) | |
| Serve at: | ) | |
| | ) | |
| Registered Agent: | ) | |
| Louis J. Fusz, Jr. | ) | |
| 925 N. Lindbergh Blvd. | ) | |
| St. Louis MO 63141 | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

COMES NOW Plaintiff Lisa Johnson ("Plaintiff" or "Johnson"), by and through undersigned counsel, and for her Complaint, states as follows:

1.      At all times relevant hereto, Plaintiff was an adult resident of St. Charles County, Missouri, a citizen of the United States of America, and a resident within the boundaries of the Eastern District of Missouri.

2.      Defendant Lou Fusz Automotive Network, Inc. ("Defendant" or "Lou Fusz") is a Missouri corporation in good standing with its principal place of business located at 925 N. Lindbergh Blvd., St. Louis, Missouri, 63141 and within the boundaries of the Eastern District of Missouri.

3.      All of the acts and occurrences herein set forth took place within the boundaries of the Eastern District of Missouri.  Venue is proper in this District pursuant to 28 U.S.C. § 1391.

4.      This Court has jurisdiction over Plaintiff's claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1140 (Sections 502 and 510 of ERISA).

**FACTUAL ALLEGATIONS**

5.      At all relevant times herein, Johnson was an employee of Defendant.

6.      Johnson commenced her employment with Defendant in or about June of 1997 as a full-time Fleet Leasing Agent.

7.      As a Fleet Leasing Agent for Defendant, Johnson's job duties included organizing the leasing and rental of automobiles to Lou Fusz's existing customer base of corporate clients, including but not limited to GE Capital and PHH Arval. Johnson performed a variety of duties servicing Defendant's existing corporate customer fleet accounts, including organizing customer information, organizing information regarding automobile auctions, handling the titling and leasing of fleet vehicles, and fielding telephone calls from Defendant's corporate customers.

8.      Throughout Johnson's employment with Defendant, she received positive performance evaluations and was never the subject of any disciplinary measures.

9.      Lou Fusz provided a group health insurance plan for the benefit of eligible employees.

10.     Lou Fusz established and/or maintained its group health insurance plan for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death.

11.     Lou Fusz acted directly as an employer, or indirectly in the interest of an employer, in relation to its group health insurance plan.

12.     Through her employment with Defendant, Johnson and her family, including her twelve-year-old son Colson Schaefer ("Colson"), were eligible to receive benefits through Defendant's group health insurance plan.

13.     Plaintiff designated Colson as a beneficiary of her health insurance plan, entitling Colson to receive health insurance benefits.

14.     Defendant knew that Plaintiff was a participant in its group health insurance plan.

15.     Defendant knew Colson was a designated beneficiary of its group health insurance plan.

16.     In or about 2006, Colson suffered a brain hemorrhage which doctors determined was caused by an incurable medical condition known as Cerebral Arteriovenous Malformation ("brain AVM").

17.     A brain AVM is characterized by an abnormal, tangled connection between the arteries and veins in the brain. The abnormal connection between the cerebral arteries and veins prevents adequate blood flow to the brain. In serious cases, the blood vessels rupture, causing hemorrhaging, or bleeding, in the brain.

18.     Since 2006, Colson has undergone three brain surgeries to remove brain AVMs. Doctors performed brain surgery to treat Colson's third and most recent brain AVM in August 2011.

19.     In addition to Colson's three brain surgeries, doctors utilized gamma knife radiation to treat Colson's brain AVMs. Gamma knife radiation involves the application of a controlled dosage of radiation to the portion of the brain afflicted by the AVMs.

20.     Since 2006, Colson has been required to undergo angiograms every nine to twelve months to monitor the development of his brain AVMs.

21.     Since 2006, Colson has been required to undergo CT scans every six to nine months to monitor the development of his brain AVMs.

22.     Since 2006, Colson has been admitted to Children's Hospital and Barnes-Jewish Hospital on numerous occasions for multiple days to monitor and remove his brain AVMs.

23.     Colson's medical treatment was normally scheduled with medical professionals weeks in advance, allowing Johnson to schedule her days off work by providing advance notice to Defendant.

24.     Defendant was aware that Colson suffers from brain AVMs.

25.     From 2006 until Johnson's termination from employment by Defendant on January 24, 2013, Defendant's group health insurance plan covered the costs of monitoring and treating Colson's brain AVMs, including, but not limited to, surgeries, angiograms, CT scans, and hospital admissions.

26.     Defendant knew that its group health insurance plan covered Colson's medical, surgical and hospital care or benefits.

27.     Defendant knew that its group health insurance plan covered benefits in the event of Colson's sickness, accident, disability, and/or death.

28.     Defendant knew Johnson's insurance policy covered costs associated with Colson's treatment for brain AVMs.

29.     The serious and continuing nature of Colson's medical condition led to increased costs for the health insurance Defendant provided to Johnson as a benefit of her employment.

30.     Defendant was aware of the extensive expenses it incurred as a result of insuring Colson's medical care through Johnson.

31.     Colson's brain AVMs constitute a continuing medical condition which can be monitored and treated by medical specialists, but not cured.

32.     Defendant was aware that Colson will continue to suffer from brain AVMs.

33.     Defendant was aware of the continuing and incurable nature of Colson's debilitating brain AVMs.

34.     Defendant was aware that it would incur continuing and increasing costs associated with insuring Johnson and her family because of Colson's medical condition.

35.     Defendant was aware that its group health insurance plan would continue to cover the costs of monitoring and treating Colson's brain AVMs while Plaintiff was employed by Defendant.

36.     Defendant was aware its group health insurance plan would be required to cover the costs of future surgeries, hospital stays, and/or other medical procedures to treat Colson's brain AVMs while Plaintiff was employed by Defendant.

37.     During a telephone conversation between Defendant and Johnson on January 24, 2013, Defendant terminated Johnson's employment with Defendant.

38.     There is direct and clear evidence and statements from Defendant that it sought openly and directly to discourage and interfere with Plaintiff exercising and attaining her rights as a participant Defendant's group health insurance plan because of Colson's medical expenses.

39.     During the telephone conversation in which Defendant terminated Johnson's employment, Defendant informed Johnson that Defendant eliminated her Fleet Leasing Agent position to "cut company employment costs," which Plaintiff understood to be a direct reference to the health or medical costs of her son.

40.     During the telephone conversation in which Defendant terminated Johnson's employment, Defendant repeatedly mentioned Colson's medical condition, and how Johnson's termination placed her in a "bad position" regarding Colson's medical costs.

41.     During the telephone conversation in which Defendant terminated Johnson's employment, Defendant directly stated to Johnson that she would no longer be able to rely on the insurance policy provided by Defendant to cover Colson's extensive medical expenses, but that Johnson could receive COBRA benefits or unemployment compensation to help cover Colson's medical costs.

42.     Johnson's former co-worker at Defendant took over her duties as Fleet Leasing Agent after Johnson's termination. Defendant paid Johnson's former co-worker more money than it paid Johnson to perform the same duties.

43.     Approximately one week after Johnson's termination, Defendant dissolved its Business Development Center. Employees of the Business Development Center were offered other permanent employment positions with Lou Fusz.

44.     Defendant did not offer Johnson another employment position prior to or after terminating her employment.

45.     At the time of her termination, Johnson had never been the subject of any prior warnings, evaluations indicating poor job performance, or disciplinary actions while employed with Defendant.

## COUNT I

### (ERISA § 510 UNLAWFUL DISCHARGE)

46.     Plaintiff re-pleads and incorporates by reference all allegations contained in paragraphs 1 through 45 as if fully stated herein.

47.     Defendant's group health insurance plan constitutes an "employee welfare benefit plan" or "welfare plan" as defined by ERISA, 29 U.S.C. § 1002(1).

48.     Defendant's group health insurance plan constitutes an "employee benefit plan" or "plan" as defined by ERISA, 29 U.S.C. § 1002(3).

49.     Plaintiff was a participant in an ERISA plan, as defined by 29 U.S.C. § 1002(7).

50.     Colson was a beneficiary of an ERISA plan, as defined by 29 U.S.C. § 1002(8).

51.     Defendant, as Plaintiff's employer in relation to her health insurance plan, had discretionary authority to administer the plan.  As such, the health insurance plan under which Plaintiff and Colson received coverage was established under, and controlled by, ERISA, 29 U.S.C. §§ 1001-1461.

52.     Plaintiff and Colson had participated, and were expected to further participate, in a statutorily protected activity (*i.e.*, the use of health insurance benefits through Defendant's plan).

53.     A causal connection exists between Plaintiff's use of health insurance benefits and Defendant's discharge of Plaintiff.

54.     Defendant discharged Plaintiff for the purpose of interfering with Johnson's attainment of a right to which she may have become entitled under Defendant's group health insurance plan, in violation of 29 U.S.C. § 1140 (ERISA § 510).

55.     Defendant discharged Plaintiff with the specific intent to avoid costs incurred by Colson's use of Defendant's group health insurance plan.

56.     Johnson's present or future entitlement to benefits under Lou Fusz's group health insurance plan was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

57.     Any justification by Defendants for the adverse action taken against Plaintiff (*i.e.*, her discharge) is pretextual.

58.     There are direct and clear evidence and statements from Defendant that it sought openly and directly to discourage and interfere with Plaintiff exercising and attaining her rights as a participant in an ERISA plan.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to: loss of employment, health care benefits, and wages.

WHEREFORE, Plaintiff Lisa Johnson respectfully requests the Court enter judgment in her favor and against Defendant as follows:   declare Defendant's actions were in violation of ERISA; order reinstatement of Plaintiff to her position as Fleet Leasing Agent at Lou Fusz; in connection with reinstatement, award Plaintiff restitution in the form of back pay for Defendant's violation of ERISA in an amount equal to her lost wages and other benefits of employment, with pre- and post-judgment interest; and award reasonably attorneys' fees and costs incurred herein; and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues in this case which are so triable.[1]

---

[1] Plaintiff acknowledges that many claims under ERISA do not implicate a right to a jury trial; however, to the extent ERISA claims do implicate a right to a jury trial, Plaintiff seeks to preserve such right by making the request here. *See, e.g.*, *Hellman v. Cataldo*, No. 12-CV-02177-AGF, 2013 WL 4482889 (E.D. Mo. Aug. 20, 2013) (denying motion to strike jury demand in complaint based on violations of ERISA).

Respectfully Submitted,


By:      _____*/s/ Kevin Dolley*_____
Kevin J. Dolley, #54132MO
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Blvd.
St. Louis, MO  63144
(314) 645-4100 (phone)
(314) 736-6216 (fax)
kevin@dolleylaw.com

*Attorney for Plaintiff Lisa Johnson*